Bentley, J., (Orally).
This cause cumes into this court on appeal from the judgment of the court of common pleas rendered in the action. The plaintiffs, as heirs at law of one Frederick Rickard and Mary Rickard, ask the court to set aside a certain deed made by Frederick and Mary Rickard to the defendant, George F. All-bee, on the 25th day of June, 1892, upon the ground that when this deed was made the grantors' were incompetent to make the same, being old people and mentally infirm and incapacitated; that their deed should not be allowed to stand; also upon the ground that the deed being made upon consideration that defendant Allbee should maintain and support the grantors during their lives or the life of either ot them, and provide suitable funeral for them when they died, furnishing them during their lives or the life of either of them with everything necessary for their comfort; that the contract thus made was unfulfilled; that Mr. Allbee failed to comply with the requirements of the contract he had thus made, and it is also claimed that the deed itself was procured by the exercise of undue influence upon the part of Mr. Allbee over the grantors, by which they were induced to make and deliver the same. The defendants, husband and wife, deny the allegations of the petition regarding the incapacity of the gr .ntors to execute that deed; denying the^exercise of any undue influence by the defendants or either of them by which the deed was obtained ;and they also deny that there was any failure to carry out the provisions of the contract. The case ■ was tried in this court upon the pleadings and the evidence introduced by the parties respectively.
It appears from the evidence that this deed was made on the 25th day of June, 1892, and delivered at that time; *664 that concurrently with the making and delivery of the deed a written contract was entered into between Frederick Rickard and George F. Allbee, whereby in consideration of the making and delivery of this deed and the turning over by Frederick Rickard to Mr. Allbee of certain personal property, Mr. Allbee agreed to do the following things, that is, the contract provides that, “The said George F. Allbee hereby promises and agrees to and with the said Frederick and Mary.Rickard, that he will suitably provide for the said Frederick and Mary Rickard for and during their natural lives or the life of either of them, providing them with a suitable and proper home on said farm where they now live, with all necessary and suitable provisions, fuel, wearing apparel, nursing and care in sickness and medical attendance, and at their death a respectable funeral and tombstones at the grave of each of them, to cost about $80.00 It is understood that said second party shall do, or cause to be done, all of the work in and about the. farms occupied by said Frederick and Mary Rickard, including the cooking of all their provisions,and also that he shall furnish food for one cow. It is further understodoh and agreed that at the death of Frederick and Mary Rickard, said second party shall cause their bodies to be properly and decently buried in the W--■ — cemetery in Sandusky county, Ohio, and their graves properly marked with the tombstones above mentioned.”
And this is the contract, which it is said, was not fulfilled by Mr. Allbee. At the time of the making of the contract and of the deed the defendants executed and delivered to Rickard a mortgage back upon the premises, securing the fullfilment on their part of the terms of this contract. The parties, after the making and delivery of these instruments, continued to reside in the house on the farm conveyed by the deed until January, 1893, when the said Frederick Rickard died,and a little less than a month thereafter, May,his wife, also died, and it is shown that the plaintiffs are the heirs at law of Frederick Rickard.
When the contract was made, in June, 1892, Mr. Rickard was an old man, between 75 ad 80 years of age, and, while he had considerable vigor as a man of his age, like old men of that age, naturally, he was somewhat feeble in mind. His wife, some years younger than himself, was, at the time, mentally deranged, but resided in the house with him.
It is claimed by the plaintiff that Mr. Rickard for some time prior to this occasion, in June, 1892, had become so *665 weak and feeble ’ in intellect that he could not understand the nature of this contract which he was thus making. There is some proof tending to show and showing that about that time and within a month or two afterward his memory had become somewhat impaired, so that, as is usual in persons of extreme old age, the recent things did not impress themselves upon his mind, as did the things of long ago. It seems he was capable of recalling clearly the things of earlier years, but his memory was not so good as to recent years. It is shown by the testimony that on certain occasions and quite frequently the old man would cry. Some of the witnesses, most of the witnesses, say that these occasions would be when he was recounting some circumstance of his life or was remembering some old associates, and some of the witnesses say that on some occasions he would cry without any apparent good reason for his emotion.
Some of the plaintiffs testify, in general terms, that, having seen him about these times, in their opinion, he was incapable of fully understanding the kind of contract he made in June, 1892, and that some time after that, on-various occasions, he expressed himself as dissatisfied therewith, and made certain other expressions which, as he made them, indicate, perhaps, that he would desire to make some other arrangement than the one he had made. The great bulk of this general testimony regarding his incapacity is ■given in depositions by the plaintiffs themselves. While other witnesses who spoke of him, detailed some of these ■characteristics or weakness on the part of the old man, their testimony does not go to the extent that the testimony of the plaintiffs does in showing this feebleness of mind on the part of the old'man. It is shown in the testimony that very shortly after the making of this contract, I think on the 27th of June, two days after the contract, one of these witnesses came with the old man to Bowling Green to the probate judge of that county, and on his application to the probate judge appointed the old man as guardian for his wife; and sometime after this, in August, of 1892, Mr. Rickard walked the distance from his farm to the village where the nearest railroad station was, and made the necessary .arrangements himself for a visit to his relatives in the state of New York, made the journey alone, and visited at various houses among his relatives there, stayed there several weeks, and during the time certain of his relatives sent him upon •errands, seemed to entrust him- with 'doing certain matters as if at that time they recognized his capacity at least to do •ordinary chores and things about the house.
*666 We think, from the whole testimony -bearing upon his-conduct, and this habit that he had of crying on occasions, it fairly appears that his sensibilities had become considerably tender; that he had no control over-his emotions, but that this crying was almost invaribly occasioned by his recounting of some of the circumstances of his life or recalling to memory old acquaintances; and while on such occa- • sions a person in vigorous intellect would not ordinarily thus give way to his emotions, yet it is in the experience of all of' us that there is a great difference in persons regarding this-matter; it does not necessarily indicate entire breaking down of the intellect, nor such a mental failing as to show that the person is incapable of understanding the ordinary transactions of life.
Remember, this was an old man, and the feebleness of age-alone is not sufficient to set aside the contract or agreement or deed which an old person may enter into, unless some-other things occur. The old man and his wife never had any children. They lived alone, and they had taken to bring up- and live with them the defendant George Allbee, when he-was a small boy, taking him from an infirmary, and keeping' him with them until he arrived at the age of majority. It does not appear that Rickard had any relatives in this part of the country, his relations being, so far as the testimony shows, in the state of New York. As old age came upon him and he had leisure to reflect upon these matters, the testimony indicates that from time to time his mind would revert to these relatives in the state of New York, and the natural and asked some of them to come and make some arrangement by which he should be taken care of. No arrangement of the kind was made, and in August, 1892, after making' this contract, he makes this visit to his relatives in New York. No change in the general provisions for his life was' made when he was there among his relatives, and in the situation that this old man found himself in, with a demented wife, separated from his kindred who had not visited him for 20 years, it would be quite natural that, in reflecting" upon these matters, his sensibilities should be somewhat disturbed and that these reflections, coupled with the weakness- and helplessness of old age, might naturally cause his emotions from time to time to get the better of him, and while-it would appear to a person not interested who should see-him break down and weep on these various occasions that it was without cause, and therefore an indication of mental malady, yet by the person who realized the situation of the-old man weeping on these occasions might not be justlv so regarded.
*667 The whole testimony, taken together, we think comes far short of indicating that this old man when he made this-contract was incapable of understanding it. Soon after-wards he told his relatives in New York exactly what he had. done, and seemed to understand and remember the terms of the contract and the situation in which he was placed, and: while one of them says that he expressed regret that the arrangement was not made with him instead, proof of that is made only by the testimony of that person himself, he being-one of the plaintiffs. The testimony shows that Allbee, thedefendaut, while not, perhaps a man of exceeding industry and energy, yet while he lived in the community and resided! with these old people, he maintained a good reputation in every other respect, and was fairly industrious and did the things that seemed to be necessary to do. At any rate, he. lived on good terms with the old people for many years;; seemed to be regarded by them in the place of a son, and,, when he became of age, there was a sort of settlement made1 with him; the old man gave him a sort of setting out usual» in old times when a boy was apprenticed, and the young man-took his departure, and went some little distance and engaged in labor, and finally was married; married a daughter of one of his employers. After a while, in about a year, he-came back(evidently by an arrangement with the old people), and stayed nearly a year with them, and then went away and was gone several years, and was living apart from the old couple in the fall of 1891, having then a wife and several children. At that time the old man visited him where he lived, and requested him to come and make some sort of arrangement whereby he should take the property belonging to the old man, and take care of him and his wife during the time in which them should live, and, in fact, do the-things which were afterwards mentioned in this written contract. It is shown that the old man then offered to deed: him the property outright, even before he should come, and; while that may be claimed as an evidence of mental weakness, it is to be remembered that this young man at that-time stood to the old man almost in place of a son,never having had any difficulty, being upon good terms, and the old' man evidently having the fullest confidence in him. The-young man then suggested to Mr. Rickard that perhaps it would be better, in view of the fact that he had several children and that the old gentleman and lady were not especially acquainted with his wife, that they had better come without making any permanent arrangement in the first place, and see how they should get along, and then in time they might enter into a contract.
*668 In the fall of 1891, All bee moved on this place, and began ¡living in the same house with these people, bringing his ■wife and children. Things proceeded properly, so far as any testimony indicates, between the young people and the old people until the summer of 1892, when they had then lived there several months.
Then from the uncontradicted testimony delivered to us, fit appears that from time to time the old man suggested "that it would be proper to have this thing put in writing in proper shape, and the young man, instead of being exceedingly anxious to get the property into his hands and to get ■the title to it, delayed and put it off, saying he was busy •with his work, etc.; and so matters run along with no con“tract in writing at all until shortly before June, 1892. Then the old man, it seems, after special consultation with the young man, went to the office of a lawyer with whom he was .acquainted and told him what he wished drawn up, and •afterwards, on the 25th of June, 1892 the old man himself -suggested that that was the proper time to go and have these papers executed. The young man yielding to that, went ■with the old man and lady to the office of the lawyer, and ■these papers were then drawn up and fully explained to them, -and while it is said that the old lady at that time was not ^mentally sound, yet when her attention was called she could 'hold her mind upon a matter and seemed to understand it •for the moment, but would seem to soon get off from it; but ■the old man seemed fully capable of understanding the contract and desirous of entering into it. These contract papers were drawn up and signed and delivered,and the parties continued to reside together as before.
Now, it seems to us that the testimony would not at all warrant us in finding that these contracts ought to be set aside on account of any mental infirmity of the old man, or •any incapacity on his part to understand them. It is true that these contracts are regarded with great scrutiny by the courts, and properly so. Courts at all times look into the •circumstances of the case and size of things which in •other matters might not appear to be of great moment as to reason for setting them aside where there is any inequity, sometimes even regarding a failure to comply with the contract of this kind as being the non-fulfillment of a sort of condition of the deed itself, although no condition was expressed in the deed. Some lawyers refuse to draw contracts of this kind at all when applied for, on account of the fact that a great many times trouble arises from them, and they do *669 not want to have anything to do with it, and do not wish to entourage it. On the other hand, it is known that sometimes •old people find themselves in the condition where they really desire something like this; they have a little property, and have no other way of making any arrangement whereby their old age can be made comfortable. It is entirely proper that the court scrutinize any arrangement of this kind and see that it is fairly understood and fully carried out, but to hold that such agreements are not tobe upheld at all, would in many instances be a cruelty to the old people,and deprive them of the only disposition of their property which they could make íd order to make their old age comfortable. In this case it seems that instead of a refusal to draw the contract, the terms were made so explicit and the charge made upon the property itself in such away that it would be impossible that any great injustice should be accomplished. It is not a case where the grantee could make over this title to some stranger and refuse to fulfill his contract.
Now, what we have already said would indicate that in the judgment of this court it cannot be at all fairly said that this old man was unduly influenced or hoodwinked or deceived into the making of this deed. It was a matter of his own suggestion, and, if it was fairly carried out, we are not able to see that it was an improvident arrangement for the old man to make.
The remaining question is, whether or not the contract was fairly carried out. After the death of the old people.a neighbor, an intelligent man, a witness before this court upon the trial, was appointed administrator of the estate. He seems to have known something of the family, and been at the house during the time that these people lived together, and when the young man brought the receipts showing that he had complied with the contract regarding funeral expenses and erection of tombstones provided by the contract, he, without hesitation, canceled this mortgage, declaring that it had been fully and faithfully performed, and he says as a witness upon the stand, that he did that. There is some testimony tending to show that some criticism was made upon the young people on account of the way that they treated the old lady. That is, that they had some pickets put in, a sort of a partition in a large room, and the old lady was kept there for the most part behind these pickets; but it appears that some sort of protection was necessary considering her condition. She was liable to run off, go away; she was liable to injure herself; she was liable to put her hands into *670 the téa-kettle, etc., so it became necessary that something be done to protect her, and here was this man having his work to do upon the farm, his wife with several children and housework to attend to, and it would be impossible without hiring a person especially, to keep the old lady out of danger without taking some such precaution. The pickets were put up, as it was thought by some, a little too low, and upon suggestion being made of that kind, they were increased in height, but that she ivas ever injured or ever in danger of being injured thereby does not appear. She ate with the family, and as far as we can determine by the testimony, she was taken care of as well as, under the circumstances, could reasonably be expected.
Baldwin & Harrington, for Plaintiff.
L. K. Hollenbeck and Thomas N. Bierly, for Defendant.
The testimony of Mr. Allbee, given id an apparently very candid manner, goes a great ways to convince the court that so far as he was able to, he complied with the provisions of this contract and fairly kept the terms of it on his part to provide comfortably for these old people, and we see no cause whatever for depriving him of the property or for setting aside these conveyances that this property may go to the plaintiffs who claim it in this action.
Judgment of the court will be in favor of the defendants. The petition will be dismissed at the cost of the plaintiffs.